UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 05 CR 792 - 5 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| ELLEN ROTH, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Ellen Roth has been convicted of a violation of 18 U.S.C. § 1001 and comes before the Court for sentencing.

This case stems from a bid by a corporation, Siemens Medical Solutions ("SMS"), for a radiology contract at the Cook County Hospital ("the County"). The County required that bids for the $49 million contract provide that thirty percent of the performance and proceeds must go to a Minority Business Enterprise ("MBE"). To satisfy the MBE requirements, SMS entered into a purported joint venture agreement with Faustech Industries ("Faustech"), a certified MBE, to form DD Industries. Under the Joint Venture Agreement, which was submitted to the County, Faustech was to share in thirty percent of the profits and losses of DD Industries. However, contrary to the information submitted to the County, SMS and Faustech entered into a side agreement, whereby SMS would pay Faustech a $500,000 flat-fee and Faustech would do only limited work.

Pursuant to a written plea agreement, Defendant Roth has pled guilty to making materially false statements to the FBI during an investigation of the fraudulent scheme (Count V of a superseding indictment). Additionally, Roth has stipulated to having committed wire fraud and mail fraud in relation to the bid scheme (Counts I and II). As calculated in the Presentence Investigation Report, Roth's offense level is 26, with a criminal history category of I; the Guidelines range for imprisonment is 63 to 78 months, which is reduced to 60 months because the statutory maximum sentence is five years.

The Court has considered the Presentence Investigation Report, sentencing memoranda and other materials submitted by the parties. The "starting point and the initial benchmark" of any sentencing is the calculation of the applicable Guideline range. *Gall v. United States*, 128 S.Ct. 586, 596 (2007) (*Gall*). However, the Guidelines are "not the only consideration" – a district judge should then "consider all of the factors [listed in 18 U.S.C. § 3553(a)] to determine whether they support a sentence requested by a party." *Gall*, 128 S.Ct. at 596. The judge "may not presume that the Guidelines range is reasonable." *Gall*, 128 S.Ct. at 597.

However, "a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." *Gall*, 128 S.Ct. at 594. A sentence departing downward from the Guidelines to impose no or only nominal imprisonment "can be justified only by a careful impartial weighing of the statutory sentencing factors." *United States v. McIlrath*, 512 F.3d 421, 426 (7th Cir. 2008) (quoting *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007)). That said, the Supreme Court has held that requiring "extraordinary circumstances" to justify a sentence outside the Guidelines range or

2

mandating the use of "a rigid mathematical formula" comes "too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Gall*, 128 S.Ct. at 595. A court should "impose a sentence sufficient, *but not greater than necessary*," to comply with the purposes set out in § 3553. 18 U.S.C. § 3553(a).

After careful consideration of the sentencing factors set out in § 3553(a), the Court has determined that a downward departure from the Guidelines is required; and a sentence of probation, rather than imprisonment, is appropriate.

Roth was Assistant Secretary of SMS and an in-house attorney. Roth did not initiate or design the fraudulent scheme and participated by preparing the false affidavit of joint venture only after her repeated attempts to avoid so doing were rejected by others at SMS. The decision to form a sham joint venture to ostensibly comply with the MBE requirements was made by other officers at SMS. The secret flat-fee agreement was negotiated by Richard Brockman, Regional Vice President of Sales of SMS and Faust Villazan, the owner of the MBE, without Roth's involvement. Roth suggested several times during the bidding process that SMS seek a waiver of the MBE requirements from the County. These suggestions were ignored or brushed aside. Roth wrote a letter to John Scholnick, lead outside counsel of SMS, raising concerns about the MBE requirements; Scholnick told Roth not to worry about it. Roth had no active or primary role in concealing the fraud during a hearing in the civil case filed as a result of the fraud. Rather, Roth was told by her supervisors within SMS to stay away from Chicago during the civil proceedings, during which SMS, through Scholnick, attempted to conceal the scheme. James Ruger, an attorney and Roth's supervisor at SMS, attended the civil proceedings daily. It is reasonable to conclude that Ruger was aware of the scheme before and during the civil trial but

3

did nothing to disclose the fraud. Considering these circumstances in totality reveals that others higher in the corporate structure at SMS were the primary forces behind the fraud and the subsequent efforts to conceal it. However, Roth and Daniel Desmond, a district business administrator for SMS, are the only SMS employees charged.

Considering the nature and circumstances of the offense, the Court finds that the offense level determined under the Guidelines substantially overstates the seriousness of the offense. *See* U.S.S.G. § 2B1.1 Application Note 19(v)(C). Both the offense of conviction and the two stipulated counts have a base level offense of six. However the loss amount, calculated at $14.7 million in accordance with *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006), leads to an increase of 20 levels, under §2B1.1(b)(1)(K). Thus, it is the amount of loss, $14.7 million, that causes an increase of 20 levels that vastly overstates Roth's culpability in the matter and produces a Guidelines sentence that is grossly disproportional to Roth's participation in the offense. This is particularly so when considering the conduct of those individuals who initiated, planned and supplied the driving force behind the fraud yet, were not prosecuted. *See United States v. Samaras*, 390 F.Supp.2d 805, 809-10 (E.D.Wis. 2005) (finding a sentence below the Guidelines range appropriate where range was driven by a high loss amount, but defendant had no role in setting that amount and did not profit from it any more than from his legitimate business dealings); *See also United States v. Redemann*, 295 F.Supp.2d 887, 899 (E.D.Wis. 2003) (a defendant with a limited or inferior role in the fraud may be entitled to a downward departure).

The fraud in this case was intended to benefit SMS. SMS was charged with and previously pled guilty to one count of obstruction of justice pursuant to a plea agreement with the

4

Government. SMS did not stipulate to the underlying fraud offense; and as a result, SMS paid only a fine of $1 million, without probation, and restitution based on an agreed loss amount of $1,516,683. Had SMS been held accountable for the $14.7 million loss amount, it would have faced a maximum fine of $29.4 million with $26,460,000 as the low end of the Guidelines range. The gross disparity between the $14.7 million being used to calculate Roth's sentence under the Guidelines and a penalty of a fine only based on a loss amount of $1.5 million paid by SMS leads to a manifestly unjust result. The corporation that initiated and was the intended primary beneficiary of the fraud received a relatively small financial penalty;[1] whereas, a low-level employee, who initially resisted the fraud scheme and would have received no benefit from it, is facing several years of incarceration under the Guidelines.[2]

Furthermore, a sentence within the Guideline range would not provide further deterrence with respect to Roth. Under § 3553(a)(2)(C), a court must consider the need for the sentence imposed to protect the public from further crimes of the defendant. The evidence presented overwhelmingly supports the conclusion that Roth presents no threat of recidivism. Until this case, Roth had absolutely no criminal or disciplinary history. Roth has shown obvious and sincere remorse for her crime, and letters written on her behalf demonstrate conclusively that this was a one-time failing. The publicity regarding her conduct has obviously caused her great

---

[1] Siemens AG, the parent company of SMS, had annual revenue of approximately 87 billion euros in 2001. SMS, itself, had revenues in the billions of dollars.

[2] The Court recognizes that the relevant scope when considering sentencing disparities considered under § 3553(a)(6) is generally nationwide. See *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). However, in this case, the situation of Roth's role in the offense is so unique that few other cases are likely to be relevant for purposes of comparison.

5

embarrassment and humiliation. Furthermore, Roth has lost her law license as a result of this case.[3] Therefore, a sentence of imprisonment to deter Roth and protect the public from further criminal conduct by her is unnecessary.

A sentence within the Guidelines range as to Roth may be ineffective or counterproductive in terms of deterrence to others. Under § 3553(a)(2)(B), a court must consider the need for the sentence imposed to afford adequate deterrence to criminal conduct generally. In this case, those officers at SMS who initiated and drove the scheme to defraud the County are not before the Court. To harshly punish only Roth in these circumstances would not deter and could encourage others in positions of control to make decisions, such as here, to violate the law, knowing that those lower on the corporate ladder would bear the risks of detection and prosecution.[4] A term of imprisonment for Roth could produce a result contrary to the instruction of § 3553(a)(2)(A) that a court shall consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." See Gall, 128 S.Ct. at 599 ("a sentence of imprisonment may work to promote not respect, but derision of the law . . .").

The seriousness of Roth's conduct cannot be minimized, particularly in context of her role in the scheme to defraud the County and her position as a licensed attorney for SMS.

---

[3]In a proffer session on August 25, 2005, James Ruger, Roth's boss, advised the Government that Roth did not receive a raise or a bonus as a result of her conduct and estimated that Roth lost about $65,000 in income for 2004-05 as a result of it.

[4]SMS documents produced in discovery show that Barry Cohen, the SMS salesman on the Cook County deal, received $245,868 as a bonus or commission because of the award of the Cook County Hospital contract. After the enforcement of the contract was enjoined in the civil proceedings, he was required to repay all of the money over a series of installment payments.

6

However, considering the kinds of sentencing available, under § 3553(a)(3), a sentence of probation is "sufficient, but not greater than necessary," to comply with the above-stated purposes of sentencing. A term of probation, including a significant term of home confinement, will be a significant restriction on Roth's freedom. She shall also pay a substantial fine and perform a period of community service. Such a sentence will be sufficient but not greater than necessary to meet the sentencing requirements of § 3553(a) discussed above.

Dated: March 18, 2008

JOHN W. DARRAH
United States District Court Judge